**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **GOOD SPORTSMAN MARKETING LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:05CV90** |
| | § | **PATENT CASE** |
| **TESTA ASSOCIATES, LLC, et al.** | § | |
| | § | |
| **Defendants** | § | |

## MEMORANDUM OPINION

This Memorandum Opinion construes the terms in U.S. Patent Nos. 6,735,387 (filed Jan. 10, 2001) and 6,768,868 (filed Aug. 12, 2002).

## BACKGROUND

The '387 Patent covers a motion detector camera that can be configured to take pictures when a user is not present. Generally, the motion detector camera described in the '387 Patent includes a housing, camera mechanism, flash, and motion detector. The camera also has three states in which it can operate: a pause state, burst state, and test state. The parties agreed to the meaning of "test state," and the Court construes "pause state" and "burst state."

The '868 Patent is a continuation in part of the '387 Patent. The '868 Patent specifically claims a motion detector camera where the camera is a digital camera. The '868 Patent also includes an "activity counter" for counting the number of times the motion detector is triggered. Defendants argue the terms "activity counter," "triggering signal," "triggering activity," "operating mode," and other terms incorporating those terms are too ambiguous to be construed. Defendants move for

1

summary judgment that the asserted claims of the '868 Patent are invalid and unenforceable under 35 U.S.C. § 112, ¶ 2.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs. *Id*.  Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'"  *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.  The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but

technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## THE '387 PATENT[1]

### Motion detector camera

The Court construes "motion detector camera" to mean "a digital or mechanical film-based camera that takes pictures when it detects motion."  Defendants' proposed construction limits a "motion detector camera" to a camera that records images on a film medium, expressly excluding a digital camera.  Defendants argue that only a film-based camera is disclosed in the specification. Defendants also argue that during prosecution of the '868 Patent, the Examiner found that the '387 Patent did not disclose digital cameras. *See* '868 Patent, Office Action February 2, 2004 at 15, 16, 19, 22, and 23.  Defendants contend that Plaintiffs admitted in their Initial Disclosures that the '868 Patent claims asserting "digital camera electronics" are not entitled to the '387 Patent priority date, which is further proof that digital cameras are not disclosed in the '387 Patent.

Defendants are correct that the '387 Patent does not specifically disclose digital cameras. While all of the preferred embodiments described in the '387 Patent are film-based cameras, no where in the '387 Patent or its claims does the inventor disavow coverage of digital cameras, which were known in the art when the application was filed.  Additionally, the patentee clearly stated in

---

[1] Appendix A contains the relevant claims of the patent with the disputed terms in bold.

the specification:

> The above description is intended to be illustrative, and not restrictive.  Many other embodiments will be apparent to those of skill in the art upon reviewing the above description.  The scope of the invention should, therefore, be determined with reference to the appended claims, along with the full scope of equivalents to which such claims are entitled.

Col. 6:29–34.  Thus, one skilled in the art would have understood that the patent was not limited to film-based cameras.

Defendants' prosecution history arguments are equally unavailing.  While the examiner did find that certain '387 Patent claims did not disclose "digital camera electronics," the examiner did not find that digital cameras were not covered by the '387 Patent.  Rather, the examiner rejected the proposed claims on double-patenting grounds.  Finally, although Plaintiffs are not claiming the '387 Patent's priority date for certain claims in the '868 Patent, Plaintiffs did not admit that this is because the '868 Patent's digital camera claims are new matter and thus not entitled to the earlier date.

The Court rejects Defendants' limitation that would exclude digital cameras from the meaning of "motion detector cameras."  Defendants are unable to point to any place in the specification or prosecution history where the patentee clearly disavowed such coverage.  Accordingly, the Court will not import the limitations of the preferred embodiments into the claims.

**Burst state**

The Court modifies Plaintiffs' proposed construction and construes "burst state" as "the camera takes a pre-determined number of pictures in rapid succession in response to one or more signals from a motion detector."  The claim itself teaches that when the camera is in the burst state, a signal is sent to the camera "to cause the camera mechanism to take a predetermined number of

pictures in rapid succession." Claim 17, col. 8:62–64. The specification similarly teaches that when the camera is placed in the burst state, "when the controller 301 receives a signal from motion detector 106, the controller causes a series of exposures to be taken one after another in rapid succession." Col. 4:29–32.

Defendants' proposed construction, "a user-selected mode of operation of the motion detector camera in which two or more photographs are taken in three seconds or less in response to a single signal from the motion detector," interjects limitations that are not supported in the claims or specification. First, Defendants would require the user to select the burst state mode. Defendants contend that user selection is the only manner the specification discloses for placing the motion detector camera into the burst state. Defendants argue that use of the word "selectively" within the claim indicates user input or selection is required for entry into a burst state. Defendants' limitation strains the claim language and imports limitations from the preferred embodiment. The claimed method includes the step "selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state," which the Court will also construe. The claim language uses the passive tense and does not limit who or what can selectively place the camera into the particular states. The specification also teaches that the camera can be programmed to automatically go into a pause state. Col. 4:35–44. During the hearing, Defendants argued, "The second step is an active step of selectively placing the camera into one of those programmed steps [sic], either by leaving it alone in the default it came in or by changing the parameters. That is the selective part of it." Transcript (Docket No. 94) 28:10–14. Thus, Defendants concede that someone other than the user may make the initial selection of camera state.

Second, Defendants would require that two or more photographs are taken in three seconds

or less.  Defendants argue "in rapid succession" requires a more precise definition.  Defendants base their three-second limitation on other prior art and the speed at which they approximate an animal "at game trail speed [could] traverse the detection zone of the motion detector camera."  *See* Defendants' Response to Plaintiffs' Claim Construction Brief (Docket No. 74) at 17.  The patent does not limit "in rapid succession" any more precisely.  Defendants do not argue that "in rapid succession" is a term of art requiring explanation for the jury.  It is a phrase potential jurors will be familiar with, and the Court will not place additional limitations on the claim language based on such weak support.

**Pause state**

The Court construes "pause state" to mean "the camera delays taking a picture for a predetermined amount of time in response to one or more signals from a motion detector."  Again, this construction is taken from the claim language and the specification.  The claim states that when the camera is in the pause state, it "ignor[es] the signal from the motion detector until a predetermined amount of time has passed."  Claim 17, col. 6:65–67.  The specification teaches that, "[w]hen put into a pause state, the controller ignores any triggering events of motion detector 106 until a predetermined amount of time has elapsed."  Col. 4:36–40.

Like with "burst state," Defendants seek to include a user-selection limitation.  Specifically, Defendants urge the Court to construe "pause state" to mean "a user-selected  mode of operation of the motion detector camera in which signals from the motion detector cause no pictures to be taken for a user-selected period of time."  Defendants' construction also requires that the user determine the length of the delay in the pause state.  While both of these limitations are features of preferred embodiments, neither is required by the claim language or the specification.  Defendants argue that

7

the user-selection limitation is required by the claim language "selectively placing the motion detector camera into . . . ." Defendants' construction excludes the possibility that a camera may be preprogrammed by the manufacturer with default states, shipped with a default state already selected, or that the length of the pause state may be set by the manufacturer. These possibilities are not excluded by the claim language or disavowed in the specification or prosecution history. Accordingly, the Court will not limit the claim in this manner.

**Test state**

During the hearing, the parties agreed "test state" should be construed to mean "a test light emits light suddenly or in intermittent bursts in response to one or more signals from a motion detector, but the camera does not take a picture." The Court agrees.

**Selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state**

The Court construes "selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state" as "the motion detector camera is placed automatically or by the user into at least one of a burst state, a pause state, and a test state." Defendants' construction, "the motion detector camera is purposely put by the user into the burst state,  pause state, or test state or the motion detector camera is purposely put by the user into two or more of such states simultaneously," contains two unnecessary limitations. First, Defendants' construction requires the user to select the camera state. For the reasons already discussed, the Court rejects this limitation. Second, Defendants' construction requires that the camera be placed into "two or more" states simultaneously. The claim language is not so restrictive as it only requires  that the camera be placed into "one or more" states. Defendants argue that to give "one *or more*" any meaning, it must be interpreted to mean "two or more." Defendants have no support for this argument, which

belies the very meaning of "*one* or more."   The Court's construction accurately reflects the plain

meaning of the claim language.

**"Signal" terms**[2]

The Court adopts Plaintiffs' constructions and generally construes "a signal" as "one or more

signals."   Defendants' proposed constructions limits "a signal" to "a single signal." Although this

appears to accurately reflect the claim language, the limitation is unwarranted.

"'[A]' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims

containing the transitional phrase 'comprising.'"   *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423

F.3d 1343, 1350 (Fed. Cir. 2005) (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356

(Fed. Cir. 2000)).   "The" is given the same presumptive meaning of "one or more" when used in a

"comprising" claim.   *Id.* at 1350–51.   This plural meaning is overcome "only when 'the claim is

specific as to the number of elements' or 'when the patentee evinces a clear intent to . . . limit the

article.'"   *Id.* at 1350 (quoting *KCJ Corp.*, 223 F.3d at 1356).   Claim 17 is an open-ended claim and

uses the term "comprising."   Claim 17 ("A method of controlling a motion detector camera, the

method comprising:").

Defendants argue that the specification limits the signal to a single signal.   Defendants are

incorrect.   Like the claim, the specification uses the term "a signal."   *See* Abstract; Cols. 1:45–51,

4:14–16, 4:25–34.   The specification does not expressly limit the signal to a single signal.   Rather,

Defendants argue that a single signal is necessary for the one-to-one correspondence between the

triggering event and signal.   However, this one-to-one correspondence between a single triggering

---

[2] Whether "a signal" is "one or more signals" or "a single signal" is the disputed issue in the following terms:  receiving a signal from a motion detector, sending a signal, ignoring the signal from the motion detector, and sending a signal to a test light to cause the test light to flash.  The Court's constructions of these terms can be found in Appendix B.

event and single signal is created by Defendants, not by the patent.   The specification, neither by expression nor logic, does not require that only a single signal be sent per triggering event.   All that is logically required is that the camera mechanism know what the signal(s) means.   There is nothing in the specification or claim language that would prevent the motion detector from always sending two signals when a triggering event occurs.   Accordingly, the Court rejects Defendants' argument.

**Camera Mechanism**

The Court construes "camera mechanism" to mean "the functional components of the motion detector camera."   Defendants' proposed construction limits the camera to a film-camera, a limitation the Court has already rejected.   Defendants' proposed construction also includes the limitation that the camera mechanism "includes a stand-alone [off-the-shelf] camera that can be used independently when removed from the housing of the motion detector camera."   Defendants argue the Court should adopt this limitation because Plaintiffs do not argue against it, nothing in the claims excludes off-the-shelf cameras, and Figure 7 depicts such a camera.   The specification does not describe the camera mechanism in Figure 7 as an off-the-shelf camera.   The claim does not address whether the camera mechanism can be an off-the-shelf camera.   Defendants do not present any reason that the jury should specifically be instructed that the camera can be an off-the-shelf camera.   Accordingly, the Court rejects this limitation of Defendants' construction.

**To cause the camera mechanism to take a predetermined number of pictures in rapid succession**

This is closely linked to the term "burst state."   The Court construes "to cause the camera mechanism to take a predetermined number of pictures in rapid succession" as "two or more pictures are taken in rapid succession in response to a triggering event."   Defendants' construction, "the single signal sent from the controller to the camera mechanism causes the shutter of the camera to

open and expose the film more than once such that at least two pictures are taken, with one picture immediately following the other during a period of less than three seconds," incorporates Defendants' proposed limitations on the terms "a signal," "camera mechanism," and "burst state." The Court has already rejected these limitations.  As with "burst state," Plaintiffs' proposed construction omits the limitation that the pictures are taken in rapid succession.  The Court's construction modifies Plaintiffs' proposed construction to correct this omission.

**Sending a signal to a test light to cause the test light to flash**

The Court construes "sending a signal to the test light to cause the test light to flash" to mean "sending one or more signals to the test light to cause the test light to emit light suddenly or in intermittent bursts."  The Court has already addressed whether "a signal" should be construed as "one or more signals" or as "a single signal."  The Court incorporates the parties' agreed construction of "test state" into the construction of this term, which describes the test state.

## THE '868 PATENT

**"Housing" terms**

### *Housing*

The Court adopts Plaintiffs' construction and construes "housing" to mean "a cover or enclosure."  Defendants propose that "housing" be construed to mean "the protective outer cover of the motion detector camera, which excludes any inserts or partitions contained within such protective outer cover."  Defendants' construction contains unnecessary limitations.  Defendants partially rely on Figure 7 to support their construction.  Defendants seem to argue that because Figure 7 shows an outer housing and inside the housing a motion detector and a camera, the enclosures containing the motion detector and camera are not part of the housing and, therefore,

11

"housing" must exclude any partitions or inserts contained within such "housing."  Figure 7 is only one embodiment of the invention, and there is no explicit support in the specification for applying Defendants' limitation to the claim term.  Defendants also cite prior art in which, according to Defendants, the housing is not considered to include anything within itself.  However, Defendants fail to cite anything within the specification or prosecution history that would indicate the examiner or applicant defined or used "housing" in that manner.

The specification broadly describes the housing as "an enclosure for holding the various components of the camera."  Col. 2:54–55.  Accordingly, the Court construes "housing" as "a cover or enclosure."

### Mounted inside a housing

The Court construes "mounted inside a housing" as "secured inside a housing."  Defendants argue "mounted inside a housing" should be construed as "carried within the protective outer cover of the motion detector camera."  This construction includes Defendants' construction of housing, which the Court has already rejected.  The remainder of Defendants' construction only slightly varies from Plaintiffs', which the Court adopts.  Defendants argue "to 'mount' means 'to fix securely to a support.'"  *See* AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).  Accordingly, the Court construes "mounted inside a housing" to mean "secured inside a housing."

### Exposed on a surface of the housing

The Court adopts Plaintiffs' proposed construction and construes "exposed on a surface of the housing" to mean "visible on the outside of the housing."  Less Defendants' construction of housing, Defendants' construction is identical: "visible on the outside of the protective outer cover of the motion detector camera."

12

### Mounted to the housing

Similar to its construction of "mounted inside a housing," the Court construes "mounted to the housing" to mean "secured to the housing."   Defendants' construction requires a direct attachment to the housing: "directly attached to the protective outer cover of the motion detector camera."   To support that construction, Defendants cite numerous examples in the specification where something is mounted to the housing and there is no mention of anything between that object and the housing.  However, neither the claims nor the specification ever require a direct connection to the housing.   The Court will not import this limitation from the specification and rejects Defendants' proposed construction.

## "Activity counter" terms

### Activity counter

Defendants contend that prior-art motion-detector cameras included "event counters" to count each event detected by the motion detector.  According to Defendants, "event counter" had acquired an established meaning in the art.  Although the "event counter" did not display the number of events, many cameras included a means for the user to view the number of events counted. Defendants argue that the term "activity counter" cannot be construed because one skilled in the art cannot determine whether the "activity counter" performs the counting function (like the known "event counter") and the display function or whether the activity counter only performs the display function and does not perform the counting function.

Although the change in nomenclature may be slightly confusing, it is not fatal.   The specification and claims make clear that the activity counter counts and displays the number of triggering signals sent by the motion detector to the controller.

13

The specification summarily describes one embodiment of the invention as having an "activity counter" activated by the controller when a triggering activity occurs.  Col. 1:48–50. Embodiments of the invention may include a display, and that display may be an LCD display. Cols. 4:17–20, 5:25.  The display may show the number of exposures taken by the camera, the power level, a film count, or other information.  Cols. 4:17–20, 5:25.  The display can "also be used as an activity counter displaying the number of triggering activities sensed by the motion sensor. Col. 8:17–19.  In that situation, "controller 901 can increase the activity counter by one when motion detector 906 is triggered and sends a triggering signal to the controller."  Col. 8:20–22.

In one operating mode, when a triggering activity occurs, the controller sends a signal to the activity counter, the activity counter increases, and no picture is taken.  Col. 8:25–26.  In another operating mode, the activity counter can increase and the camera can take a picture.  Col. 8:23–26. The activity counter can also continue to increase after the camera runs out of film.  Col. 8:27–29. "In one example, the controller goes into the activity counting mode automatically when the camera runs out of film."  Col. 8:39–41.

In claims 5 and 21, the activity counter is programmable to display at least a predetermined number of triggering events detected by the motion detector.  Cols. 12:64–67, 14:33–35.  In claims 7 and 8, the activity counter is mounted to the housing, displays the number of triggering signals, and the number of the activity counter is increased by the controller when the controller receives a triggering signal.  Col. 13:16–17, 23–26, 27–30.  In claims 23, 24, and 26, the activity counter is mounted to the housing, and the controller activates the activity counter when the controller receives a triggering signal.  Col. 14:55, 61–64.

Generally, a term should be given the same meaning throughout the patent.  *Wilson Sporting*

14

*Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1328 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1314).   The general role of the activity counter is described in claim 7: "the activity counter for displaying a number of triggering signals."   Col. 13:16–17.   Although the activity counter's purpose is described in claim 7, the activity counter is actually first mentioned in dependant claim 5, where an additional limitation is placed on the activity counter: "an activity counter which is programmable to display at least a predetermined number of triggering events detected by the motion detector."   Col. 12:64–67.   Claim 21 also includes this limitation.   Col. 14:33–35.   The other claims that include the activity counter—claims 8 (dependent on 7), 23, and 26—do not contain any further description of the function or nature of the activity counter.   Therefore, the generalized description in claim 7—for displaying a number of triggering signals—is logically read to apply to all other mentions of activity counter.   Thus, throughout the claims, the activity counter displays a number of triggering signals.

The patent also teaches that the controller can activate the activity counter when it receives a triggering signal from the motion detector.   *See* claim 5 at col. 12:65–67; claim 21 at col. 14:33–35 ("programmable to display . . . number of triggering events detected by the motion detector"); claim 7 at col. 13:16–17, 23–26; claim 23 at col. 14:59–64; claim 26 at col. 15:15–19; *see also* col. 8:18–19, 20–22, 32–34, 41–42.   Additionally, the specification teaches that in one mode "the activity counter continues to count the times the motion sensor is triggered."   Col. 8:41–42.   Accordingly, the Court construes "activity counter" to mean "a device for counting and displaying the number of triggering signals received by the controller from the motion detector."

### *The controller increases the number of the activity counter* and *increases the activity counter* and *the controller activates the activity counter*

Defendants argue these terms cannot be construed since "activity counter" cannot be

construed.  As the Court has construed "activity counter," the Court disagrees.  Typically, one assumes that different terms used in claims have different meanings.  *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005).  These terms are an exception to that general rule as the inventor used the terms interchangeably.   The inventor used "the controller increases the number of the activity counter" in independent claim 7 and "increases the activity counter" in dependent claim 8.  In claim 7, upon receiving a triggering signal, in the first mode, the controller "activates the camera mechanism" and, in the second mode, the controller "increases the number of the activity counter and does not activate the camera mechanism."  In claim 8, in the first mode, the controller "activates the camera mechanism and increases the activity counter."  This appears to be a shortened way of saying "increases the number of the activity counter" since it is contrasted with claim 7, in which the number of the activity counter must be increased in the second mode but not in the first.  Additionally, the specification uses the phrases "increase the activity counter by one" and "increase the activity counter" interchangeably.  Col. 8:20–20, 26, 27, 33–34.  Thus, these terms both mean "increases the number of the activity counter."  No further construction of the terms are necessary since the Court has already construed "activity counter."

"The controller activates the activity counter" is used in claims 23 and 26.  This term is used in the limitations that distinguish the first and second operating modes.  *See* cols. 14:57–64, 15:11–19; *see also* claim 7 at col. 13:19–26 (using "the controller increases the number of the activity counter" in the same context).   In the first mode, the controller activates the camera mechanism when it receives a triggering signal from the motion detector.  In the second mode, the controller activates the activity counter but does not activate the camera mechanism.  *See also* col. 8:23–26 (describing the two modes).  The parties agree that the term "the controller activates the

camera mechanism," used in claims 23 and 26, means "the controller causes the camera mechanism to take a picture."  Thus, in this context, Defendants agree that "activates the camera mechanism" does not mean to turn the camera mechanism on, but rather it means that the camera mechanism performs its inherent function—taking pictures.  Similarly, "the controller activates the activity counter" does not mean that the activity counter is turned on or enabled to operate, but instead means that the activity counter performs its inherent function—counting triggering activities.  Thus, the Court construes "the controller activates the activity counter" as "the controller increases the number of the activity counter."

**Triggering signal(s)** and **Triggering activity**

Defendants argue that "triggering signal(s)" and "triggering activity" are also not capable of construction.  Defendants argue it is not possible to construe these terms in light of the patent's use of similar terms—"triggering event signal," "triggering activity signal," and "triggering event."  Defendants concede that on its face a "triggering event signal" is a signal indicating a triggering event and, likewise, a "triggering activity signal" is a signal indicating a triggering activity.

The claims use the terms "triggering event" and "triggering activity" synonymously.  The claims also use the terms "triggering signal," "triggering event signal," and "triggering activity signal" synonymously.  Claims 7–14 are the best example of this.  In claim 7, the motion detector sends the controller "triggering signals."  Col. 13:21–22, 25–26.  The camera in claim 7 operates in at least two modes.  In the first mode, the controller activates the camera mechanism upon receipt of a "triggering signal" from the motion detector.  Col. 13:20–22.  In the second mode, the controller increases the activity counter but does not activate the camera mechanism when it receives a "triggering signal" from the motion detector.  Col. 13:22–26.  In claim 8, which depends from claim

7, in the first mode, the controller both activates the camera mechanism and increases the activity counter when a "triggering activity" occurs. Col. 13:27–30. Thus, it is a "triggering activity" that initiates the "triggering signal." In claim 14, which depends from claims 13 and 7, the controller is programmable to ignore "triggering event signals" sent by the motion detector until a predetermined amount of time has passed. Col. 13:45–48. Since claims 7 and 13 do not require the controller to act on any "triggering event signals," such signals must be the "triggering signal" of claim 7. Thus, "triggering event signal" and "triggering signal" must be the same. Further, since "triggering activity" initiate the "triggering signal," "triggering activity" must also initiate "triggering event signals."

Other claims also illustrate this interchangeability. In claim 15, the motion detector sends the controller a "triggering activity signal." Col. 13:53–55. In claim 18, which depends from claim 15, information about a "triggering activity" is stored when the controller receives a "triggering signal" from the motion detector. Col. 14:1–3. Thus, claims 15 and 18 use "triggering activity signal" and "triggering signal" synonymously. Similarly, in claim 20, the controller stores a "triggering activity" upon receipt of a "triggering signal" from the motion detector. Col. 14:14–21.

In claim 21, the activity counter is programmable to display a predetermined number of "triggering events." Col. 14:33–35. In the pause state, the controller ignores any "triggering event signals" received from the motion detector for a predetermined time. Col. 14:36–39. Thus, in claim 21, "triggering events" cause "triggering event signals."

Claim 26 uses "triggering signal" and "triggering event signals" synonymously. In claim 26, the controller receives a "triggering signal" from the motion detector and acts upon the signal. Col. 15:12–19. The controller is also programmable to ignore any "triggering event signals" from

18

the motion detector until a predetermined time has passed.  Col. 15:19–23.

The specification supports the synonymous use of the terms.  The Summary teaches that in the first mode of one embodiment, the motion detector sends a "triggering signal" to the controller and the controller then activates the camera mechanism.  Col. 1:44–47.  In the second mode of this embodiment, the controller activates the activity counter but not the camera mechanism when a "triggering activity" occurs.  Col. 1:47–50.  In another embodiment, the motion detector sends a "triggering activity signal" to the controller.  Col. 1:51–57.  In this embodiment, the camera's shutter button is located external to the housing allowing a manual activation of the camera.  Col. 1:55–57.  In a third embodiment, which includes a digital camera mechanism, the motion detector sends a "triggering signal" to the controller.  Col. 1:58–64.  The distinguishing feature of these embodiments is not the use of a "triggering signal" as opposed to a "triggering activity signal"; rather, it is clear from these descriptions of the embodiments that the drafter used "triggering signal" and "triggering activity signal" interchangeably.

In the Detailed Description, the specification teaches that, in one embodiment, the motion detector sends a signal to the controller when a "triggering event" occurs.  Cols. 4:34–36, 8:2–4.  A motion detected by the motion detector is one example of a "triggering event."  Cols. 4:36–37, 8:4–5.  Upon receiving the signal indicating the "triggering event," the controller sends signals to the flash and the camera mechanism.  Cols. 4:37–40, 8:5–9.  In another embodiment, the LCD display can be used as an activity counter to display the number of "triggering activities" detected by the motion sensor.  Col. 8:17–19.  In that instance, when the motion detector is triggered, it sends a "triggering signal" to the controller, which then increases the activity counter by one.  Col. 8:19–22.

19

In the pause state, the motion detector sends a "triggering signal" to the controller, and the controller increases the activity counter by one.  Col. 8:30–34.  The controller then goes into a pause state and ignores the motion detector for a period of time.  Col. 8:34–35.  "This prevents a single motion activity from causing an inordinate amount of triggering signals."  Col. 8:35–37.  In the pause state, the controller ignores any "triggering events" of the motion detector for a pre-determined amount of time.  Col. 8:61–65.  In another embodiment, the controller can be programmed to ignore a "triggering activity" during flash charging or film removal.  Col. 9:2–5.  The controller can also be programmed to go into the pause state after each "triggering event."  Col. 12:3–4.

It is clear from the claims and specification that "triggering event" and "triggering activity" are synonymous, as are "triggering signal," "triggering event signal," and "triggering activity signal."  The Court construes "triggering signals" to mean "signals sent from a motion detector in response to activity detected by the motion detector" and "triggering signal" to mean "one or more signals sent from the motion detector in response to activity detected by the motion detector."  The Court construes "triggering activity" to mean "activity that is detected by the motion detector."

**"Operating mode" terms**

***Operating modes***

Defendants argue that the term "operating mode" cannot be construed.  Defendants contend it is unclear whether "operating mode" refers to a functioning status of the controller, which the user can control, or to external factors over which the user has no control.  Defendants provide a general dictionary definition for each of the term's components: "operate" is "to perform a function; work" and "mode" is "a given condition of functioning; a status."  *See* AM. HERITAGE DICTIONARY OF THE

ENGLISH LANGUAGE (4th ed. 2000).  Citing instruction manuals and the descriptions of prior art game surveillance cameras, Defendants argue that "operating mode" refers to a user-selected status of the camera during which certain functions are performed.  Defendants contend that "operating mode" must include user selectivity and some change in the controller's function.

In the Summary section, the specification describes the controller as having at least two "operating modes."  Col. 1:44.  In the first operating mode, the controller activates the camera mechanism when the controller receives a triggering signal from the motion detector.  Col. 1:44–47. In the second operating mode, the controller activates the activity counter and  does not activate the camera mechanism when a triggering activity occurs.  Col. 1:47–50.  The Detailed Description states that in "one operating mode," the activity counter can increase and a picture can be taken when the signal is received.  Col. 8:23–24.  In "another operating mode," the controller can be set so that only the activity counter increases, and a picture is not taken. Col. 8:24–27.  Another example of this mode is when the film runs out while pictures are being taken and the camera automatically—without user input—takes no pictures.  Col. 8:27–30.  This mode is described as the "activity counting mode."  Col. 8:39–40.

The claims describe three operating modes.  In claim 7, the controller has at least two operating modes.  Col. 13:19.  In a first mode, the controller activates the camera mechanism when the controller receives a triggering signal from the motion detector.  Col. 13:19–22.  In a second mode, the controller increases the number of the activity counter and does not activate the camera mechanism when the controller receives a triggering signal from the motion detector.  Col. 13:22–26.  In claim 8, which depends from claim 7, in the first mode the controller activates the camera mechanism and increases the activity counter when a triggering activity occurs.  Col.

13:27–30.   A third mode is described in claim 9, which depends from claim 7, in which the controller activates a test light and does not activate the camera mechanism when a triggering activity occurs.   Col. 13:31–34.   Claims 20, 23, and 26 contain the same description of "operating modes" as claim 7.

The specification clearly provides that an operating mode can be switched automatically or by the user.   An "operating mode" is not defined by the manner in which it is selected.   Defendants argue that an "operating mode" must be selected by the user but this construction is not supported by the specification.   The specification provides that the camera can switch from "first mode" to "second mode" by the user's input or automatically when the film runs out.   User input or selection is not a necessary element of an operating mode.

The specification supports defining "operating mode" as a functional status of the controller—irrespective of whether the user controls selection.   Defendants argue there is no difference between the "first mode" and "second mode" because the controller does not change its functioning state at all.   The specification states that when the film runs out, the activity counter can increase while no pictures are taken.   Col. 8:26–29.   It is implicit from the language that when the film runs out, the controller will not activate the camera mechanism.   Thus, the functional status of the controller changes from the "first mode" to the "second mode."   Defendants' contention that the controller does not change its functioning state is without merit.   The Court construes "operating mode" to mean "a functional status which the controller can be placed in by the user or automatically without user intervention."

### First mode

Defendants argue it is not possible to determine what happens in the "first mode."

Defendants contend the specification does not describe what the activity counter does in the "first mode."  The specification summarizes that in the "first mode," the controller activates the camera mechanism when the controller receives a triggering signal from the motion detector.  Col. 1:44–47. In the Detailed Description, in "one operating mode," the activity counter can increase and a picture can be taken.  Col. 8:23–24.  In claim 7, in the "first mode" the controller activates the camera mechanism when the controller receives a triggering signal from the motion detector.[3]  Col. 13:20–22.  In claim 8, which depends from claim 7, the controller activates the camera mechanism and increases the activity counter when a triggering activity occurs.  Col. 13:27–30.

The essential characteristic of the "first mode" is the activation of the camera mechanism by the controller when the controller receives a triggering signal.  Claim 7 does not require the activity counter to be increased.  Claim 8 specifies that the activity counter is increased in the "first mode." It is clear from the claims and specification that the camera is in "first mode" when the controller activates the camera mechanism in response to a triggering activity.  The camera will be in "first mode" irrespective of whether the activity counter is activated by the controller.  The Court construes "first mode" to mean "the controller causes the camera mechanism to capture an image when it receives a triggering signal from the motion detector."

***Second mode***

Defendants contend that "second mode" cannot be construed.  Defendants argue that if "second mode" simply refers to the camera running out of film, this is not an operating mode at all since the user cannot control this function.  Defendants also argue that the controller continues to perform the same function and would continue to take pictures were it not for the film running out.

---

[3]"First mode" is described similarly in claims 20, 23, and 26.

Defendants claim that the controller does not change its functional status from "first mode" to "second mode" and therefore the "first mode" and "second mode" are essentially the same.

As discussed above, switching to another operating mode does not require user-input—only a change in the functional status of the controller. In the Summary, the specification provides that in the "second mode" the controller activates the activity counter and does not activate the camera mechanism when a trigger activity occurs. '868 Patent, 1:47–50. In the Detailed Description, the text provides that "in another mode," the controller can be set so that only the activity counter increases, and a picture is not taken. '868 Patent, 8:24–26. The description further provides that the activity counter can increase when the film runs out. Col. 8:27–29. In claim 7, in the "second mode" the controller increases the number of the activity counter and does not activate the camera mechanism when the controller receives a triggering signal from the motion detector.[4] Col. 13:22–26.

It is clear from the claims and specification that the "second mode" does not have to be selected by the user. The user can specifically select the "second mode," or the camera can automatically go into the "second mode" when the film runs out. Defendants' contention that the controller performs the same function in both modes is without merit. The specification states that in the "first mode" the controller activates the camera mechanism, and in the "second mode" the camera does not activate the camera mechanism. Although the controller may activate the activity counter in both modes, the controller does not perform the same functions in both modes. The Court construes "second mode" to mean "the controller increases the number of the activity counter and does not activate the camera mechanism when the controller receives a triggering signal from the

---

[4]"Second mode" is described similarly in claim 20, claim 23, and claim 26.

motion detector."

### *Third mode*

In claim 9, which depends from claim 7, in the "third mode" the controller activates a test light and does not activate the camera mechanism when a triggering activity occurs.  '868 Patent, 13:31-34.  Defendants contend "third mode" cannot be construed since "operating mode" cannot be construed.  Neither party has asked the Court to construe "third mode," and therefore the Court declines to do so.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above.  For ease of reference, the Court's claim interpretations are set forth in a table as Appendix B.  The claims with the disputed terms in bold are set forth in Appendix A.

**So ORDERED and SIGNED this 12th day of July, 2006.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# APPENDIX A

### U.S. Patent No. 6,735,387

17.  A method of controlling a **motion detector camera**, the method comprising:

> providing the camera with **a burst state, a pause state,** and **a test state**;

> **selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state**;

> **receiving a signal from a motion detector**;

> if in the burst state, **sending a signal** to **a camera mechanism to cause the camera mechanism to take a pre-determined number of pictures in rapid succession**;

> if in the pause state, **ignoring the signal from the motion detector** until a predetermined amount of time has passed; and

> if in the test state, **sending a signal to a test light to cause the test light to flash** while not sending any signals to the camera mechanism which would cause the camera mechanism to take a picture.

### U.S. Patent No. 6,768,868

7.  A **motion detector camera** comprising:

> **a camera mechanism mounted inside a housing**;

> a motion detector **exposed on a surface of the housing**;

> an **activity counter mounted to the housing, the activity counter for displaying a number of triggering signals**; and

> **a controller** having at least two **operating modes**, wherein in a **first mode the controller activates the camera mechanism when the controller receives a triggering signal from the motion detector**, and wherein in a **second mode the controller increases the number of the activity counter** and **does not activate the camera mechanism when the controller receives a triggering signal from the motion detector**.

8.  The motion detector camera of claim 7, wherein in the **first mode**, the controller activates the camera mechanism and **increases the activity counter when a triggering activity occurs**.

9.  The motion detector camera of claim 7, wherein the controller includes a **third mode** wherein the **controller activates a test light** and **does not activate the camera mechanism when a triggering activity occurs**.

11.  The motion detector camera of claim 7, wherein the camera includes a **viewfinder** and a **shutter button located external to the housing** to **activate the camera mechanism**.

12.  The motion detector camera of claim 7, including **a flash having a range of at least 23 feet**.

23.  A **motion detector camera** comprising:

> **a camera mechanism mounted inside a housing**;

> a motion detector **exposed on a surface of the housing**;

> an **activity counter** mounted to the housing;

> **a controller** having at least two **operating modes**, wherein in a **first mode the controller activates the camera mechanism when the controller receives a triggering signal from the motion detector**, and **wherein in a second mode the controller activates the activity counter and does not activate the camera mechanism when the controller receives a triggering signal from the motion detector**; and

> and wherein the camera includes a **viewfinder** and **a shutter button located external to the housing** to **activate the camera mechanism**.

25.  The motion detector camera of claim 23, including **a flash having a range of at least 23 feet**.

## APPENDIX B

| U.S. Patent No. 6,735,387 | | |
|---|---|---|
| Claim | Claim Language (with language to be construed emphasized) | Court's Construction |
| 17 | A method of controlling a **motion detector camera**, the method comprising: | "motion detector camera" – a digital or mechanical film-based camera that takes pictures when it detects motion |
| | providing the camera with | |
| | **a burst state,** | "burst state" – the camera takes a pre-determined number of pictures in rapid succession in response to one or more signals from a motion detector |
| | **a pause state**, and | "pause state" – the camera delays taking a picture for a predetermined amount of time in response to one or more signals from a motion detector |
| | **a test state;** | [AGREED] "test state" – a test light emits light suddenly or in intermittent bursts in response to one or more signals from a motion detector, but the camera does not take a picture |
| | **selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state;** | "selectively placing the motion detector camera into one or more of a burst state, a pause state, and a test state" – the motion detector camera is placed automatically or by the user into at least one of a burst state, a pause state, and a test state |
| | **receiving a signal from a motion detector;** | "receiving a signal from a motion detector" – one or more signals from the motion detector are received |
| | if in the burst state, **sending a signal** to | "sending a signal" – sending one or more signals |
| | **a camera mechanism** | "camera mechanism" – the functional components of the motion detector camera |
| | **to cause the camera mechanism to take a pre-determined number of pictures in rapid succession;** | to cause the camera mechanism to take a predetermined number of pictures in rapid succession" – two or more pictures are taken in rapid succession in response to a triggering event |
| | if in the pause state, **ignoring the signal from the motion detector** until a predetermined amount of time has passed; and | "ignoring the signal from the motion detector" – one or more signals from the motion detector are disregarded |

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction |
|---|---|---|
|  | if in the test state, **sending a signal to a test light to cause the test light to flash** while not sending any signals to the camera mechanism which would cause the camera mechanism to take a picture. | "sending a signal to the test light to cause the test light to flash" – sending one or more signals to the test light to cause the test light to emit light suddenly or in intermittent bursts |

| U.S. Patent No. 6,768,868 | | |
|---|---|---|
| Claim | Claim Language (with language to be construed emphasized) | Court's Construction |
| 7 | A **motion detector camera** comprising: | [AGREED] "motion detector camera" is a device used for taking pictures recorded on a film or digital medium in response to detected movement |
|  | **a camera mechanism;** | [AGREED] "camera mechanism" is device used for taking pictures through conventional, mechanical  means or through use of digital components, and includes a stand-alone  camera that can be used independently when removed from the housing of the motion detector camera |
|  | **mounted inside a housing;** | "housing" – a cover or enclosure<br><br>"mounted inside a housing" – secured inside a housing |
|  | a motion detector |  |
|  | **exposed on a surface of the housing;** | "exposed on a surface of the housing" – visible on the outside of the housing |
|  | an **activity counter** | "activity counter" – a device for counting and displaying the number of triggering signals received by the controller from the motion detector |
|  | **mounted to the housing** | "mounted to the housing" – secured to the housing |
|  | **the activity counter for displaying a number of triggering signals;** | "triggering signals" – signals sent from a motion detector in response to activity detected by the motion detector |

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction |
|---|---|---|
| | **a controller** | **[AGREED]** "controller" means a device that controls the functions of the motion detector camera |
| | having at least two **operating modes,** | "operating mode" – a functional status which the controller can be placed in by the user or automatically without user intervention |
| | wherein in a **first mode** | "first mode" – the controller causes the camera mechanism to capture an image when it receives a triggering signal from the motion detector |
| | **the controller activates the camera mechanism** | **[AGREED]** "the controller activates the camera mechanism" means the controller causes the camera mechanism to take a picture |
| | **when the controller receives a triggering signal from the motion detector** | "triggering signal" – one or more signals sent from the motion detector in response to activity detected by the motion detector |
| | wherein in a **second mode** | "second mode" – the controller increases the number of the activity counter and does not activate the camera mechanism when the controller receives a triggering signal from the motion detector |
| | **the controller increases the number of the activity counter** | "the controller increases the number of the activity counter" – the controller increases the number of the activity counter |
| | and **does not activate the camera mechanism** | **[AGREED]** "does not activate the camera mechanism" means the controller does not cause the camera mechanism to take a picture |
| | **when the controller receives a triggering signal from the motion detector.** | "triggering signal" has same meaning as indicated above |
| 8 | The motion detector camera of claim 7 | |
| | wherein in the **first mode** | "first mode" – same meaning as indicated above |
| | the controller activates the camera mechanism | same meaning as indicated above |
| | and **increases the activity counter** | "increases the activity counter" – increases the number of the activity counter |
| | **when a triggering activity occurs.** | "triggering activity" – activity that is detected by the motion detector |
| 9 | The motion detector camera of claim 7 | |

29

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction |
|---|---|---|
| | wherein the controller includes a **third mode** | Construction not requested |
| | wherein the **controller activates a test light** | [AGREED] "the controller activates a test light" means the controller illuminates a test light |
| | and **does not activate the camera mechanism** | [AGREED] "does not activate the camera mechanism" means does not cause the camera to take a picture |
| | **when a triggering activity occurs**. | "triggering activity" means the same as indicated above |
| 11 | The motion detector camera of claim 7 | |
| | wherein the camera includes a **viewfinder** | [AGREED] the "viewfinder" is not required to be "located external to the housing" |
| | and a **shutter button located external to the housing** | [AGREED] "shutter button located external to the housing" means the shutter button can be accessed from outside the housing |
| | to **activate the camera mechanism**. | [AGREED] "to activate the camera mechanism" means cause the camera mechanism to take a picture |
| 12 | The motion detector camera of claim 7, | |
| | including **a flash having a range of at least 23 feet**. | [AGREED] "a flash having a range of at least 23 feet" – a device that provides a sudden, brief light with sufficient illumination to record an image at least 23 feet away from the motion detector camera |
| 23 | A **motion detector camera** comprising | [AGREED] motion detector camera has same meaning as indicated above |
| | **a camera mechanism** | [AGREED] same meaning as indicated above |
| | **mounted inside a housing;** | same as indicated above |
| | a motion detector | |
| | **exposed on a surface of the housing;** | same as indicated above |
| | an **activity counter** | same as indicated above |
| | **a controller** | same as indicated above |
| | having at least two **operating modes**, | same as indicated above |
| | wherein in a **first mode** | same as indicated above |

| Claim | Claim Language (with language to be construed emphasized) | Court's Construction |
|---|---|---|
| | **the controller activates the camera mechanism** | [AGREED] same meaning as indicated above |
| | **when the controller receives a triggering signal from the motion detector** | same as indicated above |
| | **wherein in a second mode** | "second mode" – same as indicated above |
| | **the controller activates the activity counter**; | "the controller activates the activity counter" – the controller increases the number of the activity counter |
| | **and does not activate the camera mechanism** | [AGREED] same meaning as indicated above |
| | **when the controller receives a triggering signal from the motion detector**; | same as indicated above |
| | and wherein the camera includes a **viewfinder** | [AGREED] same meaning as indicated above |
| | and **a shutter button located external to the housing** | [AGREED] same meaning as indicated above |
| | to **activate the camera mechanism**. | [AGREED] same meaning as indicated above |
| 25 | The motion detector camera of claim 23, | |
| | including **a flash having a range of at least 23 feet**. | [AGREED] same meaning as indicated above |